Filed 5/4/26  P. v. Ruvalcaba CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PABLO RUVALCABA,<br><br>    Defendant and Appellant. | C100013<br><br>(Super. Ct. Nos. STK-CR-FE-2014-0008835, SF130263B) |

This 2016 murder conviction, which arose out of an armed robbery and gunfight with the police, returns to us for the second time after resentencing hearings ordered due to recent changes in the statutory scheme defining murder, described in more detail, *post*. At both resentencing hearings, the respective superior court judges (hereafter the trial court) declined to resentence defendant Pablo Ruvalcaba, finding him still guilty of murder under current law.

The Attorney General concedes the People's evidence was erroneously admitted at this most recent hearing, but asks for remand for yet another resentencing hearing, as the People continue their attempts to prove defendant guilty of murder under current law. The People's representative in the trial court, the San Joaquin County District Attorney's Office, appears with permission as amicus curiae to oppose the Attorney General's concession and seek affirmance of the order declining to resentence defendant.

1

As we will explain, we need not reach the issue of evidentiary error because we agree with defendant that the trial court's decision that he is guilty of murder under current law is not supported by substantial evidence. This is true even assuming (for the sake of argument only) that *all* the evidence considered by the trial court below *and* any additional record evidence set forth by the People's appellate briefing is admissible and credible, and construing all evidence in the light most favorable to the People, as we must. Accordingly, we will reverse the trial court's postjudgment order denying defendant's petition for resentencing under former Penal Code section 1170.95 and remand with directions to grant the petition and resentence defendant for his participation in the armed bank robbery.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

The armed bank robbery and subsequent gunfight between the codefendants and the police occurred in 2014. The recitation of relevant facts and procedure that precedes defendant's first appeal is taken from our prior unpublished opinion, *People v. Ruvalcaba* (March 9, 2022, C091442) [nonpub. opn.] (*Ruvalcaba*).)

"The parties agree that defendant and other members of the Norteño street gang planned an armed bank robbery. Defendant was to drive the others [(three men)] and drop them off at the bank before the robbery, then rendezvous with the group a short distance from the bank, immediately after the robbery. Defendant drove the other men to the bank; when they went inside, he drove to a side street and parked, where he planned

---

[1] Undesignated statutory references are to the Penal Code.

Defendant filed his petition for resentencing under former section 1170.95. Effective June 30, 2022, Assembly Bill No. 200 (Reg. Sess. 2021-2022) renumbered section 1170.95 as section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.) In this opinion, we refer to former section 1170.95 when summarizing the procedural history of this case before we issued our prior opinion in March 2022, although we recognize that the relevant statutory language currently appears in section 1172.6.

to wait out the five minutes he expected the robbery to take. He waited about 10 minutes, saw some of the police chase, realized the others were not coming to meet him, left the car, and ran home. After stealing over $15,000 from the vault, the robbers escaped the bank by taking hostages and stealing one of the hostages' cars. A lengthy police chase and gunfight between the police and the robbers ensued; tragically, one of the hostages died as a result of gunshot wounds inflicted by police officers. Defendant was neither present during the bank robbery nor present during the subsequent chase and gunfight." (*Ruvalcaba*, *supra*, C091442, fn. omitted.)

"A grand jury heard the case and was instructed on general principles of aiding and abetting, the natural and probable consequences doctrine, the felony-murder rule, and the provocative act doctrine. It returned a true bill on multiple counts involving defendant, including first degree murder of the victim hostage. Defendant entered a negotiated plea to first degree felony murder and admitted the allegation that the murder was committed during a robbery. (§§ 187, 189.)[2] On the People's motion, the trial court dismissed the remaining counts and struck the remaining allegations; the court sentenced defendant to 25 years to life in state prison." (*Ruvalcaba*, *supra*, C091442.)[3]

*Petition for Resentencing*

"On March 7, 2019, defendant filed a resentencing petition alleging he was prosecuted for, and convicted of, murder under the felony-murder rule or the natural and

---

[2] "The record is clear that the parties and court represented defendant was pleading guilty to murder 'based on the felony murder rule,' and that defendant pleaded guilty to murder 'committed in the perpetration of robbery, within the meaning of Penal Code section 187-189.' However, the felony-murder rule was never applicable to the agreed-upon facts of defendant's involvement in the murder at issue here...." (*Ruvalcaba, supra*, C091442.)

[3] Defendant entered his guilty plea in December 2016 and was sentenced in February 2017.

3

probable consequences doctrine and could not now be convicted of murder following the passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437). The trial court found defendant had made a prima facie showing, appointed counsel, directed briefing, and issued an order to show cause (OSC)." (*Ruvalcaba*, *supra*, C091442.)

In relevant part, "the People argued at the hearing that defendant was 'convicted of first-degree murder under an implied malice theory of provocative act' rather than felony murder, despite his plea to felony murder, pointing out--as they had in their briefing--that the felony-murder rule was inapplicable to a situation such as this one, where neither defendant nor one of his accomplices is the actual killer.[4] In their briefing, the People argued extensively that as an accomplice to the robbery, defendant was liable for the provocative acts committed by his accomplices, namely the taking of the hostage and the ensuing gun battle, which led to the officers' need to fire their guns at the accomplices and the vehicle they were in, accidentally killing the victim hostage as a result.

"The People's briefing also 'borrow[ed] the framework' of *People v. Clark* (2016) 63 Cal.4th 522, 203 [(*Clark*)] to analyze defendant's role and argue that he 'acted with implied malice' and then argued alternatively that he was a major participant in the robbery and acted with the requisite indifference to human life under the framework outlined by *Clark* and *People v. Banks* (2015) 61 Cal.4th 788, such that he 'could and would be convicted of first-degree [felony] murder under the newly amended section 189.' The prosecutor also made these points at the hearing during argument.

"Defense counsel argued ... that defendant's participation in the crimes was limited to the point where it 'negates implied malice.' He added that the prosecutor had

---

**4** We note that *first* degree *implied* malice murder is not a valid theory of conviction for an accomplice under the provocative act theory of murder; the accomplice must harbor express malice--the specific intent to kill--in order to be properly convicted of first degree murder under this theory. (See *People v. Concha* (2009) 47 Cal.4th 653, 662.)

argued to the grand jury that defendant's liability was based on the natural and probable consequences theory as applied to the robbery, as well as the felony-murder theory, and defendant did not meet the requirements for either theory to apply.  He also made these arguments ... in his briefing.

"The trial court first concluded defendant was not convicted under a felony-murder theory, without mentioning the specifics of the plea to felony murder, as the killing was not 'committed by the defendant or by his accomplice acting in furtherance of their common design.'  The court then expressly declined to address defense counsel's argument as to natural and probable consequences, instead addressing the provocative act theory advanced by the prosecution, but then noting that 'the key issue here is does natural and probable consequence apply.'  The court then referenced pattern jury instruction CALCRIM No. 561, entitled Homicide:  Provocative Act by Accomplice, as revised in September 2019, in great detail." (*Ruvalcaba, supra*, C091442.)

"After paraphrasing the provisions of CALCRIM No. 561 ... and quoting from the instruction at length, the trial court opined that the major participant and reckless indifference requirements for felony murder were 'analogous to what's required for a person to be convicted of a provocative act.'  The court then examined the evidence as set forth in the parties' briefs and concluded defendant was a major participant in the robbery who acted with reckless indifference to human life, although it did not specifically articulate an analysis based on each of the relevant factors set forth in the *Clark* and *Banks* cases.

"The trial court found that it was not clear the natural and probable consequences instruction would have been given if defendant's case had gone to trial, but even if it were given, defendant 'could have been -- he would have been convicted with the new instructions [referencing CALCRIM No. 561].  Without the natural and probable consequence full instruction, he would have been found a major participant and it would have been found that he was acting with reckless indifference to human life.  Therefore, I

5

do not believe he is eligible for relief under this section.'  The court denied the petition.  [In relevant part], the court went on to state it believed there was overwhelming evidence of guilt, 'and I know the standard is beyond a reasonable doubt for this hearing.  I believe beyond a reasonable doubt he would have been found a major participant, acting with reckless indifference to human life, that the defendant would have been convicted of first-degree murder in a trial.' "  (*Ruvalcaba, supra*, C091442.)

*First Appeal:  C091442*

The specifics of the claims raised in defendant's first appeal are not relevant here; it suffices to say that in March 2022, we issued an unpublished opinion reversing and remanding the matter for a new evidentiary (or OSC) hearing on defendant's petition for resentencing, concluding that the trial court failed to make the required findings beyond a reasonable doubt and erroneously failed to consider the parties' requests to present additional evidence.  (*Ruvalcaba, supra*, C091442.)  We first explained that:

"Senate Bill No. 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability.  (*People v. Gentile* (2020) 10 Cal.5th 830, 842-844 [(*Gentile*)].)  Senate Bill No. 1437 amended section 188 to state that malice may not be imputed to a person based solely on their participation in a crime.  (§ 188, subd. (a)(3).)  Thus, under current law, where the felony-murder rule is not at issue, a person must act with malice to be convicted of murder."  (*Ruvalcaba, supra*, C091442.)

Although we declined to address the parties' arguments regarding the applicability of accomplice liability under the provocative act theory to defendant's conduct, having concluded that reversal was warranted for other reasons, we noted that, "[t]o the extent the trial court found malice imputed to defendant 'solely on his [] participation in' the bank robbery, this finding is now suspect due to subsequent changes in the law" effected

6

by Senate Bill No. 775.  (*Ruvalcaba, supra*, C091442.)  In so noting, we observed that "the trial court and parties should be aware of the contributions by Senate Bill No. 775 to the relevant analysis of defendant's petition on remand," including that "the amendments contained in Senate Bill No. 775 clarify that the changes in the law permit 'a person who was convicted of murder under *any theory under which malice is imputed to a person based solely on that person's participation in a crime* ... to apply to have their sentence vacated and be resentenced if, among other things, the complaint, information, or indictment was filed to allow the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine *or other theory under which malice is imputed to a person based solely on that person's participation in a crime*, or attempted murder under the natural and probable consequences doctrine.' " (*Ruvalcaba, supra*, C091442.)

In a footnote, we rejected defendant's argument that we should not remand for a new OSC hearing because the prosecution already " 'had its chance to prove [he] was a major participant who acted with reckless indifference to human life, and it failed to do so, as a matter of law,' " explaining that "the People were also prevented from introducing evidence at the OSC hearing."  (*Ruvalcaba, supra*, C091442.)

The remittitur was issued in May 2022.

*Additional Briefing and Second OSC Hearing*

Around a year later, after multiple extensions of time, the People filed an OSC brief (June 2023) and a supplemental brief (August 2023).  Like their previous briefing in connection with the first OSC hearing, the People argued defendant was not eligible for resentencing under section 1172.6 (formerly § 1170.95) because he could be convicted of murder under current law; specifically, as an accomplice under the provocative act murder doctrine.  The People further argued defendant could be convicted of second-degree implied malice murder under the framework of *Clark, supra*, 63 Cal.4th 522 and *People v. Banks, supra*, 61 Cal.4th 788, since he intentionally committed acts he knew

7

the natural and probable consequences of were dangerous to human life and he, nevertheless, deliberately acted with conscious disregard for human life. In making these arguments, the People primarily relied on the grand jury testimony to discuss the underlying facts. In an attachment to their briefs, the People requested the trial court take judicial notice of various documents, including the grand jury transcript. Defense counsel objected.

Defendant argued his petition for resentencing should be granted because he could not be convicted of murder under current law. As for the provocative act murder doctrine, defendant asserted there was no evidence showing that his actions contributed to or encouraged the provocative act(s) that caused police officers to shoot and kill the hostage taken by defendant's accomplices. Defendant further asserted there was no evidence he had the requisite mental state--malice aforethought--necessary to establish provocative act murder liability.

After a continuance and further argument from counsel, the trial court granted the People's request for judicial notice of the grand jury transcript. The People then withdrew their request for judicial notice of other documents and did not call any witnesses to testify. Defendant also elected not to call any witnesses.

*Trial Court's Ruling*

In December 2023, at the conclusion of the second OSC hearing, the trial court found that defendant was not entitled to resentencing under section 1172.6. The court initially opined that defendant was prosecuted under the provocative act theory, as there was "no other way" the People could have established murder liability. The court further noted that to warrant the denial of defendant's petition for resentencing, the applicable law required the People to prove that he personally harbored the mental state of malice. The court then stated in relevant part as follows:

8

"[M]y ruling is that [defendant does] not ... qualify to be resentenced based on the fact that [he] pled in 2016 to a provocative act murder that [he was] prosecuted under."[5] "That being said," as to defendant, "the Court wants to make a caveat that I'm not taking into consideration any of the gang testimony, with the exception of the cell phone evidence. At this point, I would find that it is more prejudicial than probative for the issues that this Court has to decide. [¶] Again, using the *Banks* and *Clark* factors as a framework as to whether [defendant] harbored implied malice, the Court is going to find that he is also guilty beyond a reasonable doubt, based on his [*sic*] circumstantial evidence that he was aware that the plan was to take hostages, was to carjack an individual, unable to make their getaway, dropping off the three accomplices. Again, he was aware of the amount of ammunition that they had, a rifle, all armed with a handgun, zip ties, and again circumstantial evidence that he had knowledge that the plan was to again kidnap, restrain employees and clients of the bank. That this was done in the

---

[5] In so ruling, the trial court found that defendant was not entitled to relief under section 1172.6 because he was not prosecuted under a theory that imputed malice. In other words, the court concluded that defendant had not made a prima facie showing he was entitled to resentencing under the statute. However, because this finding was not within the scope of the remittitur, we disregard it as unauthorized, as the Attorney General reluctantly concedes. (See *In re J.M.* (2024) 103 Cal.App.5th 745, 755 [the remittitur "defines the scope of the trial court's jurisdiction to act, and action which does not conform to the reviewing court's directions is unauthorized and void"]; *People v. Dutra* (2006) 145 Cal.App.4th 1359, 1367 [trial courts are bound by the directions given by a reviewing court and have no authority to retry any other issue or to make any other findings; the court's authority is limited wholly and solely to following the directions of the reviewing court].) In our prior opinion, we reversed the order denying defendant's petition for resentencing and "remanded for the trial court to conduct a new hearing under [former] section 1170.95, subdivision (d)(3) as described by [our] opinion." (*Ruvalcaba, supra*, C091442.) Thus, we remanded with specific directions to conduct a new OSC (or evidentiary) hearing under the statute. We did not direct the trial court to reconsider the prior finding that defendant had made a prima facie case for relief (i.e., defendant submitted a petition showing he was entitled to resentencing). (See § 1172.6, subds. (c). (d).)

9

middle of the day also shows reckless indifference to human life and conscious disregard. So the Court personally finds him also guilty beyond a reasonable doubt. [¶] In the event that the court of appeals disagrees with me, that he [was] not qualified to be resentenced, because [he was] not prosecuted under a theory that imputed malice to [him], based on the cases that were clear when [he] pled to murder."

Again, as in its denial of defendant's first petition for resentencing, the trial court did not specifically articulate an analysis based on each of the relevant factors set forth in *Clark* and *Banks* in concluding that defendant was guilty of murder under current law. (See *Ruvalcaba, supra*, C091442.) Nor did the court provide any explanation for its determination that defendant pleaded guilty to "a provocative act murder" despite the fact that we had found in our prior opinion that the record was "clear that the parties and court represented defendant was pleading guilty to murder 'based on the felony murder rule,' and that defendant pleaded guilty to murder 'committed in the perpetration of robbery, within the meaning of ... section[s] 187-189.' " (*Ruvalcaba, supra*, C091442.) Nor did the court identify to what it was referring when it referenced "circumstantial evidence that [defendant] was aware that the plan was to take hostages, was to carjack an individual, unable to make their getaway, dropping off the three accomplices" or "circumstantial evidence that he had knowledge that the plan was to again kidnap ... employees and clients of the bank."

*Instant Appeal and Appellate Briefing*

Defendant filed a timely notice of appeal. After numerous delays in preparation of the record as well as multiple continuances of the briefing schedule, the case was fully briefed by the parties and assigned to this panel in November 2025. The Attorney General conceded error and has joined defendant in seeking reversal of the trial court's order. In December 2025, we granted the San Joaquin County District Attorney's request to file an amicus curiae brief. In January 2026, defendant filed a response to that brief.

10

## DISCUSSION

### I

### *Analyses Under Relevant Theories of Murder Liability*

#### A. *Felony Murder*

We begin with a brief mention of a theory of murder that does *not* apply to the undisputed facts of the case against defendant--felony murder. Despite defendant's plea to first degree felony murder, the undisputed fact pattern of this robbery demonstrates that the basic requirements of felony murder were never met. The felony murder rule is not applicable where the killing was committed by a third party (e.g., police officer) who was not involved in the perpetration of the underlying felony, as occurred here. (See *People v. Taylor* (2025) 108 Cal.App.5th 849, 866 (*Taylor*).) Because the felony murder rule is not applicable to these facts, the *Banks/Clark* inquiry as to the degree of defendant's participation in the robbery and whether he displayed reckless indifference to human life during the course of the robbery is also inapplicable. (See *id*. at pp. 866-868.)

#### B. *Implied Malice Murder*

The Attorney General appears to argue that the trial court found defendant guilty of implied malice murder as a direct perpetrator. It is not clear to us that this finding was made. As is apparent from our recitation of the court's relevant findings, set forth *ante*, the trial court found first and foremost that defendant was convicted under a provocative act theory of murder (without addressing the fact that defendant clearly pleaded to first degree felony murder, as we explained in our previous opinion). The court even opined that there was "no other way" the People *could* establish liability for murder, except for the provocative act theory. Yet the court went on to purportedly apply the *Banks/Clark* analysis (without explaining the *Banks/Clark* factors or supporting evidence in any detail) to find that defendant harbored sufficient malice to be convicted of murder due to the extent of his participation in the robbery, as we have discussed. This ruling did not present as a finding of implied malice murder with defendant as an aider and abettor,

11

much less as a direct perpetrator.  Nevertheless, we next briefly address implied malice murder, and explain why substantial evidence does not support the trial court's finding of murder liability under this theory, if this is indeed the theory the trial court applied in making its alternative ruling.

Murder is the unlawful killing of a human being with malice aforethought.  (§ 187, subd. (a).)  The requisite malice may be express or implied.  (§ 188, subd. (a).)  "Murder is committed with implied malice when 'the killing is proximately caused by " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.' " ' [Citation.]  ' "To be considered the proximate cause of the victim's death, the defendant's act must have been a substantial factor contributing to the result, rather than insignificant or merely theoretical." ' "  (*People v. Reyes* (2023) 14 Cal.5th 981, 988 (*Reyes*).)  The defendant's life-endangering act must proximately cause the victim's death and that to "suffice for implied malice murder, the defendant's act" must " ' "involve[] a high degree of probability that it will result in death." ' "  (*Id*. at p. 989.)  Our Supreme Court has defined the relevant life-endangering act as one which proximately causes the victim's death, that is: " 'an act or omission that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act or omission the death of [the victim] and without which the death would not occur.' "  (*People v. Cervantes* (2016) 26 Cal.4th 860, 866.)

" '[N]otwithstanding Senate Bill [No.] 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life.' "  (*Reyes, supra*, 14 Cal.5th at p. 990.)  " '[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea.  [Citation.]  In the context of implied malice, the actus reus

12

required of the perpetrator is the commission of a life-endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act. Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.' " (*Reyes, supra*, 14 Cal.5th at pp. 990-991; see also *People v. Collins* (2025) 17 Cal.5th 293, 311.) The direct aider and abettor must, therefore, act with intent to aid the life-endangering act of the direct perpetrator that proximately causes the death. (*Reyes*, at p. 992 ["implied malice murder requires attention to the aider and abettor's mental state concerning the life endangering act committed by the direct perpetrator, such as shooting at the victim"].)

Here, the record does not support the finding that defendant knew of or aided in the shooting of the victim hostage by the police. Nor does the record support the finding that defendant knew of or acted with any intent to assist his codefendants' shooting at the police officers. The extent of defendant's participation in the robbery and the extent of his participation in the gunfight are simply not the same thing; absent the application of the felony-murder theory, which is not viable here for reasons we have explained, the life-endangering act that is properly the subject of the analysis of defendant's mens rea is *not* merely the planning of an armed bank robbery and providing the transportation thereto. Yet here the trial court appears to have improperly classified it as such. (See *Taylor, supra*, 108 Cal.App.5th at p. 867 [explaining that, "aside from the felony-murder context, participating in an 'incident' or other criminal conduct while harboring malice is no longer sufficient to support a valid theory of murder liability"].)

13

According to its own description of its analysis, and without any elaboration or reference to the record, the trial court "us[ed] the *Banks* and *Clark* factors as a framework as to whether [defendant] harbored implied malice" and found "that he is also guilty beyond a reasonable doubt, based on ... circumstantial evidence that he was aware that the plan was to take hostages, was to carjack an individual, unable to make their getaway, dropping off the three accomplices." As we next explain, the trial court's finding was legally erroneous. First, defendant's *awareness* is not the same thing as his *acting with intent to aid*. Second, we see no evidence, and the parties point to none, that defendant *was* aware "the plan was to take hostages" or to "carjack an individual"; indeed, all evidence is to the contrary. Defendant's confession[6] included his description of the plan that the robbers initially formulated as "to get money and that's it" and "no more than five minutes"; "just like that; in and out"; "no bullshit, just get the money and go." He had planned to pick up the other robbers but he saw more than one police car "flying that way [to the bank]" and "got spooked." He described his codefendants as "panicking" when they encountered the police.

Defendant's description (from his viewpoint) of a highly dangerous and poorly planned robbery gone wrong is supported by the testimony of the witnesses who, unlike defendant, were actually present at the robbery. One witness from inside the bank, when asked if the robbers were "threatening anybody" at the relevant time--when they were ready to leave the bank--said "no," but that the robbers were "confuse[d]" and acted as if "they tried to change their plans or something, they asked for car keys" and started yelling "who has a car?" Then, when the robbers saw the police were (unexpectedly) already outside, they were "afraid to go out by … themselves."

---

[6] The Attorney General cites liberally to defendant's confession, which is contained in the record of the underlying proceedings, which we have incorporated by reference. We do the same.

14

Another witness described the robbers after they left the vault as "wanting to figure out how they were getting out of there. They were kind of having a little pow-wow of 'What are we gonna do' kind of conversation." They "wanted a car" but were surprised by the presence of police officers when they went outside to access the car that was offered to them by the bank manager. They retreated back into the bank, exclaiming "We're F'd, man, we're F'd, what are we going [to] do? Gotta get out of here."

Another witness described the taking of hostages as done haphazardly after the robbers were surprised to see the police, and heard the robbers exclaiming "Oh, fuck-up, the cops are here."

The Attorney General and amicus curiae point to no evidence supporting the trial court's findings that defendant "was aware that the plan was to take hostages, was to carjack an individual." As we have described, the evidence that we have reviewed and recited in part, *ante,* supports a conclusion that the robbers committed these additional crimes *after* the initial plan to take money and leave was thwarted by the unexpected arrival of the police while the robbery was still in progress. Further, defendant was absent from all of these happenings, and there is no evidence he was aware of them until after they occurred, much less involved in their planning or aiding his co-defendants in hostage taking (or kidnapping or carjacking or shooting) in any way.

The trial court added that defendant "was aware of the amount of ammunition that they had, a rifle, all armed with a handgun, zip ties." This finding is supported by the record, at least in regard to the firearms; as we have discussed, defendant admitted that he assisted in the planning to rob the bank and that he drove the heavily armed robbers to the bank. But the court's finding "that [defendant] had knowledge that the plan was to again kidnap, restrain employees and clients of the bank" is unsupported; a plan to kidnap does not appear in the record, even circumstantially. Indeed, as we have explained, the available evidence demonstrates that the plan was a brief robbery. Although the court noted that the daylight timing of the robbery "show[ed] reckless indifference to human

15

life and conscious disregard," it is not clear what component of the relevant analysis this observation was intended to support. Regardless, none of the trial court's findings and observations provide adequate support for a finding of implied malice murder; that is, a finding that defendant either committed a life-endangering act that proximately caused the victim's death or acted with intent to aid the life-endangering act of the direct perpetrator that proximately caused the death. "The aider and abettor must know the direct perpetrator intends to commit the murder or life-endangering act and intend to aid the direct perpetrator in its commission. It is this mental relationship to the perpetrator's acts that confers liability on the aider and abettor." (*People v. Curiel* (2023) 15 Cal.5th 433, 468; see also *People v. Collins*, *supra*, 17 Cal.5th at p. 311 [describing requisite intent as subjective one; that the defendant must have actually appreciated the risk involved].)

### C.  Provocative Act Murder – Accomplice Liability

This leaves the doctrine of provocative act murder (specifically, accomplice liability therefor) as the appropriate focus of our inquiry related to sufficiency of the evidence, as we next explain.

"The provocative act [murder] doctrine arose as an alternative to felony-murder liability in circumstances where the killing was committed by a third party who was not involved in the perpetration of the underlying felony." (*Taylor, supra,* 108 Cal.App.5th at p. 861.) " ' "A provocative act murder case necessarily involves at least three people— … the perpetrator of the underlying offense, an accomplice, and a victim of their crime." ' " (*People v. Antonelli* (2025) 17 Cal.5th 719, 727.) This theory of murder liability has "traditionally been invoked in cases in which the perpetrator of the underlying crime instigates a gun battle, either by firing first or by otherwise engaging in severe, life-threatening, and usually gun-wielding conduct, and the police, or a victim of the underlying crime, responds with privileged lethal force by shooting back and killing the perpetrator's accomplice or an innocent bystander." (*People v. Cervantes, supra,* 26

16

Cal.4th at p. 867; see *People v. Gonzalez* (2012) 54 Cal.4th 643, 655 (*Gonzalez*) [the provocative act murder doctrine applies "when the perpetrator of a crime maliciously commits an act that is likely to result in death, and the victim kills in reasonable response to that act"], superseded by statute on other grounds as explained in *People v. Wilson* (2023) 14 Cal.5th 839, 868.)

"A murder conviction under the provocative act doctrine ... requires proof that the defendant personally harbored the mental state of malice, and either the defendant or an accomplice intentionally committed a provocative act that proximately caused an unlawful killing. [Citations.] A provocative act is one that goes beyond what is necessary to accomplish an underlying crime and is dangerous to human life because it is highly probable to provoke a deadly response.... Malice will be implied if the defendant commits a provocative act knowing that this conduct endangers human life and acts with conscious disregard of the danger." (*Gonzalez*, *supra*, 54 Cal.4th at p. 655; see *People v. Washington* (1965) 62 Cal.2d 777, 782 [in a typical case of provocative act murder, malice is implied from the defendant's participation in " 'an act that involves a high degree of probability that it will result in death' "]; see *People v. Lee* (2020) 49 Cal.App.5th 254, 264, fn. 7 [explaining that a provocative act is " 'an act, the natural and probable consequences of which is the use of deadly force by a third party' "].)

"An important question in a provocative act case is whether the act *proximately caused* an unlawful death. '[T]he defendant is liable only for those unlawful killings proximately caused by the acts of the defendant or his accomplice. [Citation.] "In all homicide cases in which the conduct of an intermediary is the actual cause of death, the defendant's liability will depend on whether it can be demonstrated that [the defendant's] own conduct *proximately* caused the victim's death ...." [Citation.] "[I]f the eventual victim's death is not the natural and probable consequence of a defendant's act, then liability cannot attach." [Citation.]' [Citation.] When the defendant commits an inherently dangerous felony, the victim's self-defensive killing is generally found to be a

natural and probable response to the defendant's act, and not an independent intervening cause that relieves the defendant of liability." (*Gonzalez*, *supra*, 54 Cal.4th at pp. 655-656; see also *People v. Concha,* 47 Cal.4th at p. 661; see *id*. at p. 663 [provocative act murder is "merely shorthand used 'for that category of intervening-act causation cases in which, during the commission of a crime, the intermediary (e.g., a police officer or crime victim) is provoked by the defendant's conduct into [a response resulting] in someone's death' "].)

As the Court of Appeal in *Taylor* recently explained:  There are "two essential elements of the provocative act doctrine.  First, for the provocative act doctrine to apply, the defendant or a surviving accomplice must commit a life-endangering provocative act, and a third party must kill in response to that act.  Second, the defendant, whether the provocateur or not, must have acted with a mens rea sufficient to support a conviction for murder [(i.e., malice aforethought)]." (*Taylor*, *supra*, 108 Cal.App.5th at p. 865.) "Under the provocative act doctrine, it is the provocative act, and not merely the underlying criminal conduct, which serves as the life-endangering act that permits a finding of implied malice." (*Id.* at p. 867.)

An implied malice murder conviction based on a provocative act initiated by an accomplice requires proof that the defendant knew his accomplice intended to commit the provocative act (e.g., instigating a gunfight), intended to aid his accomplice in committing that act, knew that the provocative act was dangerous to life, and acted in conscious disregard for life. (*Reyes, supra,* 14 Cal.5th at p. 992; *Taylor, supra*, 108 Cal.App.5th at p. 868.)  Absent such proof, a nonprovocateur accomplice cannot be found guilty under an implied malice theory of provocative act murder.  (See *Taylor*, at p. 868 [explaining that participation in a robbery with reckless indifference to human life does not equate to a finding that the defendant, as a nonprovocateur accomplice, aided and abetted provocative act murder with implied malice].)

As we have discussed above in our analysis of the evidence supporting liability for implied malice murder, there is simply no evidence that defendant here did anything more than plan and participate in an armed robbery. This evidence alone does not support a finding of provocative act murder. Defendant did not plead to murder under this theory; thus, he did not admit all the elements thereof, including that he personally harbored malice, as the trial court erroneously opined.

Under no theory of liability is the evidence sufficient to support the trial court's finding that defendant is still guilty of murder under current law. Accordingly, the order denying defendant's petition for resentencing must be reversed.

II

*Proceedings on Remand*

Defendant asks us to remand with directions for the trial court to grant his petition for resentencing because there is no substantial evidence to support the trial court's finding that he is guilty of murder under current law. The Attorney General disagrees, arguing that the matter should be remanded with directions for the trial court to conduct a new evidentiary (or OSC) hearing in which the court does not consider the grand jury testimony (that the People themselves presented).

Defendant has the better argument. This was the People's second opportunity to present evidence in compliance with section 1172.6, subdivision (d)(3), and they were successful in their argument to the trial court that they should be permitted to introduce the evidence the Attorney General now concedes was inadmissible. Nothing that the People sought to offer was excluded. They withdrew their request to call witnesses when they achieved their goal of admitting the proffered grand jury testimony. In considering the merits of this appeal, we have assumed for argument's sake that all of the evidence was properly admitted and considered.

19

The People have twice failed to meet their burden under section 1172.6, subdivision (d)(3), to prove beyond a reasonable doubt that defendant is ineligible for resentencing. We remand the case with directions to grant the petition and resentence defendant on the underlying offense of robbery. (See § 1172.6, subds. (a), (e); *People v. Dixon* (2026) 118 Cal.App.5th 116, 137, fn. 3 ["Granting the petition for resentencing, as opposed to ordering a new evidentiary hearing, may be the appropriate remedy where a petitioner successfully demonstrates no substantial evidence supports the denial of a section 1172.6 petition even considering erroneously admitted evidence at an evidentiary hearing"].)

## DISPOSITION

The trial court's postjudgment order denying defendant's petition for resentencing is reversed. The case is remanded with directions to grant the petition and resentence defendant on the underlying offense of robbery.

/s/ _____
DUARTE, J.

We concur:

/s/ _____
ROBIE, ACTING P. J.

/s/ _____
KRAUSE, J.